UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT SADLER,

    Plaintiff,      CIVIL ACTION NO. 09-11375

  v.         DISTRICT JUDGE ANNA DIGGS TAYLOR

MICHIGAN DEPARTMENT   MAGISTRATE JUDGE MARK A. RANDON
OF CORRECTIONS, THOMAS
K. BELL, VIRGIL WEBB, ARUS
MONAHAN, RUM D. ANDISON,
OFFICER TERRILL, and
OFFICER GALLUP,

    Defendants.
_____/


**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

  Plaintiff Robert Sadler ("Plaintiff"), a Michigan prisoner, filed this fifteen count *pro se*

civil rights action alleging that staff at the Gus Harrison Correctional Facility ("ARF"): (1) were

deliberately indifferent to his medical needs; (2) violated the Americans With Disabilities Act

("ADA"); (3) retaliated against him for exercising his First Amendment right to file grievances;

and (4) conspired to violate his constitutional rights.  Presently before court is the Motion for

Summary Judgment of ARF staff members Sandra Monahan ("Monahan"), Willis Terrill

("Terrill"), and Randy Gallup ("Gallup") (collectively referred to as "Defendants").  The motion

was filed before the exchange of any discovery, which was recently stayed.  After careful review

of the pleadings, it is recommended that, at this juncture, Plaintiff's complaint be distilled to

include only the following five claims:

1.  Plaintiff's claim that Monahan denied him a properly ventilated cell while in  the
    Administrative Segregation Unit ("ADSEG").

2.  Plaintiff's claim that Terrill was deliberately indifferent to his medical needs by
    hiding his wheelchair.

3.  Plaintiff's claim that Gallup and Terrill were involved in a contraband razor blade
    being placed in his wheelchair.

4.  Plaintiff's claim that Gallup retaliated against him by confiscating prisoner
    appliances telling the prisoners he was doing so because "plaintiff writes
    grievances."

5.  Plaintiff's claim that Gallup and Terrill conspired to violate his constitutional
    rights as set forth above.

As to all other claims, Defendants' motion should be GRANTED and those unsustainable claims

DISMISSED WITH PREJUDICE.

## A.    *Background*

At all times relevant to this case, Plaintiff has been an inmate in the custody of the

Michigan Department of Corrections ("MDOC"), housed at ARF in Adrian, Michigan.  Plaintiff

is disabled and, as needed, uses a wheelchair to move about the facility. (Dkt. No. 1, ¶ 12 and

Dkt No. 24, Ex. G-H)  He is diabetic and requires insulin on a daily basis.  Plaintiff also claims to

have heart disease, a heat-related illness, and need of special shoes and a walking cane.  (Dkt.

No. 1, ¶ 12)

Defendants are staff members at ARF.  Monahan is the Assistant Resident Unit

Supervisor ("ARUS") while Terrill and Gallup serve as Resident Unit Officers ("RUO").  D.

Andison ("Andison") is the Resident Unit Manager ("RUM"), however, to date, he has not been

served with a summons and Plaintiff's complaint.[1]  Plaintiff's Complaint alleges that on January

1, 2008, he filed a grievance against Andison for violating his constitutional rights during an

administrative hearing regarding Plaintiff's personal property.  Plaintiff claims that this grievance

precipitated a wide range of individual and conspired retaliatory and discriminatory conduct by

Defendants, which forms the basis of his lawsuit.  Plaintiff's Complaint seeks monetary damages

and injunctive relief.

**B.**    ***Plaintiff's Version of the Relevant Events***

According to Plaintiff, on March 6, 2008, Terrill took Plaintiff's wheelchair and hid it in

another room. (Dkt. No. 1, ¶ 15)  This prevented Plaintiff from going to take his insulin

medication and getting to the dining area for his evening meal.  Terrill did this knowing Plaintiff

was a diabetic and that physical harm to Plaintiff would likely result. (Dkt. No. 1, ¶ 15)

On March 30, 2008, Terrill and Gallup said "let's get him now" to Plaintiff when he was

leaving for his evening meal. (Dkt. No. 1, ¶ 18)  That same day, Terrill told Plaintiff that "he

would be in the hole by the end of the week" (Dkt. No. 1, ¶ 19) and charged Plaintiff with a

major rule infraction for sexual misconduct and insolent behavior.  (Dkt. No. 1, ¶ 23)

On April 3, 2008, Gallup charged Plaintiff with another major rule infraction for

"Interfering with Administrative Rules" (Dkt. No. 1, ¶ 24) and confiscated property from other

prisoners in Plaintiff's unit telling them Plaintiff was to blame "because [he] writes grievances."

_____

[1] The MDOC, ARF Warden Thomas Bell, and ARF Administrative Assistant Virgil
Webb were dismissed from this lawsuit by Order of the Court dated April 28, 2009.  (Dkt. No. 4)

(Dkt. No. 1, ¶ 21)  The rule violation was sustained by the hearing officer, and Plaintiff was moved from the handicap unit to a non-handicap unit on June, 4, 2008.  (Dkt No. 1 ¶ 24 and Dkt. No. 24 - Pl. Aff. ¶ 5)  About this time, Andison and Gallup were reassigned from the handicap unit to the ADSEG.[2]  (Dkt. No. 1, ¶ 15)

On or about September 17, 2008, while in the non-handicap unit, Plaintiff claims that Terrill along with Gallup's co-workers (including Terrill's son CO Lennox) were working "the one block housing unit where. . .[Plaintiff] had been reassigned" when "someone" placed a contraband razor blade in Plaintiff's wheelchair, for which Plaintiff was falsely charged.  (Dkt. No. 24 - Pl. Aff. ¶ 6)[3]  Plaintiff theorizes that this false charge was orchestrated by Gallup and Terrill with the help of their co-workers.  (Dkt. No.1, ¶ 25)  The charges for possession of the razor blade were sustained and Plaintiff was placed in ADSEG, under the supervision of Andison and Gallup, from September 17, 2008 until October 26, 2008.  (Dkt. No. 24 - Pl. Aff. ¶ 7)

While in ADSEG, Plaintiff was denied his medically-issued diet, use of his wheelchair and cane, and a properly ventilated unit for his heat related illness. (Dkt. No. 1 ¶ 26) Specifically, Plaintiff complains that Monihan and Andison denied him sufficient quantities of clean clothing, refused to turn on the fans when the heat index exceeded 90º Fahrenheit, allowed

---

[2] Monahan correctly notes that ARF does not have an ADSEG unit but does have "punitive detention cells."  However, to avoid confusion, "ADSEG" will be used in this Report and Recommendation.

[3] Other inmates at ARF have provided sworn statements that prison staff have made false weapons charges against them in the past.  (Dkt. No. 24, Ex. C and D)

staff to take Plaintiff's wheelchair, cane and snack bag, and placed Plaintiff on "Nutra-Loaf"[4] - causing him to develop a severe rash and sores over his body.  (Dkt. No. 1, ¶ 27)  Plaintiff also claims that Monahan violated the ADA by failing to accommodate his medical needs and failing to notify her superiors that Plaintiff was being housed in a non-handicap unit.  (Dkt. No. 1, ¶ 32 and 42)

## C.      Defendants' Version of Relevant Events

Terrill admits that he moved Plaintiff's wheelchair, which had been left unattended near the mailboxes and food line and was impeding prisoner movement in the unit.  (Dkt. No. 11, Ex. B)  Terrill, therefore, moved the wheelchair to a back room.  Terrill had no idea to whom it belonged and routinely moves wheelchairs found unattended on the unit.  *Id.*  When time becomes available, he tracks down the person to whom the wheelchair belongs.  In this instance, Plaintiff's assigned prisoner-assistant later approached Terrill and asked him the whereabouts of Plaintiff's wheelchair.  *Id.*  Terrill walked the assistant to the room where Plaintiff's wheelchair was and asked him why the wheelchair was left on base.  The assistant responded that Plaintiff had told him to leave it there and that he would retrieve the chair after his meal.  (Dkt. No. 11, Ex B, ¶¶1-5)  The Warden's Step II grievance response indicated that Plaintiff had no authority to leave his wheelchair where he had and that Terrill's action of moving the chair was in

---

[4] "Nutra-Loaf" or "Food Loaf" is a prison meal composed of the contents of normal meals that have been ground or mashed up and formed into a loaf of "unappetizing appearance and texture."  2007 (7) AELE Mo. L. J. 301.

compliance with fire safety regulations.  Plaintiff's grievance appeals were denied. (Dkt. No. 11, Ex. A)

Terrill and Gallup also deny designing a plan threatening to get Plaintiff and assert that they never made the statements alleged by Plaintiff.  (Dkt. No. 11, Ex. B and G)  Plaintiff filed a grievance and, during the investigation, it was noted that Plaintiff had received misconduct charges on the same date.  The acts of misconduct referenced in the grievance were written by Terrill on the date of the purported "threats."  However, following a hearing, the grievance was still denied.[5]  (Dkt. No. 11, Ex. C, MDOC Grievance ARF-2008-03-530-17a ("530")).

On March 30, 2008, during a routine cell search, Defendant Gallup found a tobacco can with ashes and cigarette butts in Plaintiff's cell.  Terrill issued a minor misconduct charge against Plaintiff for violating posted rules prohibiting smoking in the unit.  Plaintiff was found guilty of the charge on April 3, 2008, and was sanctioned with 5 days "Toplock" and 15 days "Loss of Privileges" ("LOP").  (Dkt. No. 11, Ex. D)  Terrill also charged Plaintiff with "Insolence/Sexual Misconduct" after Plaintiff yelled vulgar, profane and sexually charged statements at him when he was making rounds.  Plaintiff was found guilty of the insolence charge and not guilty of the sexual misconduct, with the administrative hearing officer concluding that the string of comments was essentially one act of insolence.  On April 4, 2003, Plaintiff was sanctioned with another 14 days of LOP.  (Dkt. No. 11 Ex. E and E(1))

---

[5] With the exception of the "razor blade incident," Plaintiff has not denied engaging in any of the misconduct for which he was sanctioned.

As to Plaintiff's claim that Gallup went through the housing unit and confiscated appliances from prisoners telling them it was because "Plaintiff writes grievances," Gallup denies the allegation.  Plaintiff violated the LOP sanction that had been imposed on him earlier that day. Gallup was collecting appliances from prisoners serving LOP sanctions and found three bags of tobacco and one bag of rolled cigarettes in Plaintiff's area of control.  Gallup, therefore, charged Plaintiff with a major misconduct for being in violation of his LOP sanction.  Plaintiff was found guilty of the charge on April 23, 2008 (Dkt. No. 11 Exs F and F(1) and Ex G at ¶¶ 5 and 7; also see Dkt. No. 1, ¶ 24), and his grievance objecting to the violation was rejected as an improper attempt to challenge his administrative hearing decision.  (Dkt No. 11 Ex. F(2), MDOC Grievance ARF-2008-04-580-27A ("580"))

Plaintiff's allegations relating to a denial of his medically-issued diet in ADSEG were not properly grieved.  In particular, Plaintiff's Nutra-Loaf claim was not administratively exhausted, because he failed to raise the issue in grievance number ARF-2008-11-2103-28e. (Dkt. No. 11, Ex. L)  Monahan also denies that Plaintiff's cell in ADSEG lacked proper ventilation or that she mistreated him in any way.

**D.    _Plaintiff's Complaint Counts Against Defendants_**

Plaintiff's complaint consists of fifteen (15) counts and a state law claim.  Counts Six, Seven, Eight and Eleven were dismissed by Order of the Court on April 28, 2009.[6]  Further, Counts Twelve to Fifteen (12-15) are general allegations against all defendants (including those

---

[6] Plaintiff complains that the dismissal of his ADA claim against the MDOC was improper but did not file an appeal to the Sixth Circuit.

that have been dismissed), and are duplicative of other counts.  Thus, the Counts that remain are: Counts One through Five, Nine and Ten.

### 1.      *Monahan (Counts Four, Five and Ten)*

Count Four alleges deliberate indifference against Monahan regarding Plaintiff's conditions of confinement in ADSEG.  In Count Five, Monahan is also alleged to have been deliberately indifferent to Plaintiff's medical needs and in violation of the ADA.  In Count Ten Monihan is alleged to have conspired with Defendant Andison to violate Plaintiff's constitutional rights and the ADA, while he was in ADSEG.

### 2.      *Terrill (Counts One, Two and Nine)*

Count One alleges that Terrill was deliberately indifferent to Plaintiff's "health and safety when he hid the wheelchair knowing it would prevent Plaintiff from going to get his "insulin" medication and going to the evening meal, which is quite a distance away from the unit. (Dkt. No. 1 ¶ 15)  In Count Two, Plaintiff claims Terrill retaliated against him for filing a grievance against his immediate supervisor Andison in violation of the First Amendment.  And, in Count Nine, Plaintiff alleges that Terrill and Gallup conspired against him by "hiding his wheelchair, retaliating against him, and concoct[ing] major rule infractions against Plaintiff knowing the hearing officer would find him guilty and impose sanctions."

### 3.      *Gallup (Counts Three and Nine)*

In Count Three, Plaintiff alleges that Gallup was deliberately indifferent to him, retaliated against him, threatened him and falsely accused him in violation of his "constitutional rights."

Plaintiff also complains in Count Nine that Gallup and Terrill conspired against him in violation of 42 U.S.C. § 1985.

## II.  STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  *See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp.*, *et. al.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.  *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).  "Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First National Bank of Arizona

v. Cities Service Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).

### A.    *Plaintiff's Outstanding Discovery Requests*

On or about July 9, 2009, Plaintiff filed discovery requests.  On August 20, 2009, the

undersigned granted Defendants' motion to stay discovery, except to obtain the address or other

information with respect to any unserved party.  (Dkt. No. 23)  However, having reviewed

Plaintiff's outstanding discovery, some of the information sought relates directly to the issues

raised in Defendants' Motion for Summary Judgment.  As to those issues, Plaintiff should be

afforded the benefit of the doubt and permitted to conduct discovery prior to the undersigned's

consideration of Defendants Rule 56 motion (provided he has otherwise stated a valid claim for

relief).

### III.  ANALYSIS

Plaintiff's claims against Defendants fall into four categories: (1) deliberate indifference;

(2) violation of the ADA; (3) retaliation for exercising his First Amendment rights, and (4)

conspiracy to violate his constitutional rights.  Each category is discussed separately below.

### A.    *Deliberate Indifference*

A prisoner's claim that his constitutional right to medical treatment was violated is

analyzed under the Eighth Amendment.  See *Estelle v. Gamble*, 429 U.S. 97, 103-104, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976).  To state a § 1983 claim for violation of a prisoner's Eighth

Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a

deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson,* 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "To satisfy the subjective component, Plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to Plaintiff, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

### *1.     Monahan*

Plaintiff's allegations of deliberate indifference against Monahan consist of two specific actions. First, Plaintiff alleges that Monahan "took his snack bag used for his insulin sugar intake," his wheelchair and his cane while in ADSEG (Dkt No. 1, ¶ 7, 41), and second, Monahan

disregarded his complaints about the conditions of his confinement and deprived him of clean

clothing, food for his diabetes and a properly ventilated cell.  (Dkt No. 1, ¶¶  26, 27, 41 and 42)

> **a.     Taking of Medical Items**

As to Plaintiff's wheelchair and cane, the undersigned finds that Plaintiff did not have a

serious medical need for these items while in ADSEG.  Plaintiff's wheelchair accommodation is

noted as "whenever necessary" which interprets as "distance only."  (Dkt. No. 24, Ex. G and Dkt

No. 17, Ex. J, ¶ 8)  Furthermore, according to Monahan, the wheelchair "was stored right outside

the cell door and was offered to Plaintiff whenever out of cell movement was occurring."  (Dkt

No. 17, Ex. J, ¶ 8)[7]  With respect to the cane, even assuming Plaintiff's allegations are true,

Plaintiff has not demonstrated that he had a serious medical need for it in the confines of his cell

in ADSEG.   In addition, as discussed below, Plaintiff failed to administratively exhaust his

claim that Monahan took his snack bag while in ADSEG.  (Dkt. No. 1, ¶ 41)  Therefore, Plaintiff

should not be permitted to further pursue these claims.

> **b.     Conditions of Confinement in ADSEG**

As to his conditions of confinement while in ADSEG, Plaintiff's grievance on the subject

failed to include his complaint about an appropriate diet for his diabetes (i.e., being placed on

Nutra-Loaf), and his claim of a lack of *sufficient quantities* of clean clothing must also fail

because, even if true, such a deprivation would not rise to the level of an Eighth Amendment

violation.  On the other hand, Plaintiff's claim that Monahan denied him a  properly ventilated

---

[7] Plaintiff's affidavit, which specifically addresses Monahan's affidavit, does not dispute this fact.

- 12 -

cell, knowing he was susceptible to heat-related illness, when the heat index exceeded 90 degrees was fully exhausted and, if true, would be sufficient to raise a triable issue.

### i.     The MDOC's Grievance Procedure

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.  The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 11, Ex. M).  The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure.  Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved.  A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.  The Policy requires prisoners to adhere to the following directions with respect to the filing of grievances:

> R.  A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ247B) shall be used to file a Step II or Step III grievance.  The forms may be completed by hand or by typewriter however, handwriting must be legible.  The issues shall be stated briefly but concisely.  Information provided shall be limited to the *facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included*.

(Emphasis added) (Dkt. No. 11, Exhibit M).

- 13 -

ii.        *Plaintiff's Grievance*

Plaintiff filed a single grievance in connection with his confinement in ADSEG.  In

Grievance ARF 08-11-2103-28E, filed on October 30, 2008 (the "Grievance"), Plaintiff grieved

as follows:

> while he housed in the segregation at this facility I was denied
> proper ventilation and was denied proper amounts of clean
> clothing. . .  This lack of treatment is in violation of the policy.
> The temp. in the rooms were in the 90s and we have no opening
> windows.  Also the laundry is only 3 days per week 6 items per
> bag.  That was not sufficient keep from getting rashes and sores.
> Let alone clean underwear.  Remedy: change the housing staff and
> compensate me for my deprivation of proper ventilation and
> humane living conditions.

The Grievance did not mention that Plaintiff's snack bag was taken or that he was placed on

Nutra-Loaf.  As such, Plaintiff failed to administratively exhaust these claims. See 42 U.S.C. §

1997e(a); *Woodford v. Ngo*, 548 U.S. 81 (2006) (holding that claims that are not properly

exhausted are not cognizable, and proper exhaustion mandates compliance with an agency's

procedural requirements, and a grievance rejected based on non-compliance with those

requirements does not properly exhaust); *also see Jones v. Bock*, 549 U.S. 199 (2007) (holding

that the level of detail in a grievance necessary to exhaust claims are determined by the level of

detail necessary required by the grievance procedure) and (Dkt. 11, Ex. M).  A principal of the

exhaustion rule is to ensure that prisons have an opportunity to correct a grievant's complaints

about conditions of confinement before being hauled into court. *Woodford v. Ngo*, 548 U.S. 81

(2006).  Plaintiff's failure to grieve this issue is, thus, fatal to his federal complaint allegations.

- 14 -

### iii.     *Lack of Clean Clothing*

As noted above, the Grievance stated that Plaintiff was only permitted to do laundry "3 days per week" and limited to six (6) items per bag.  Even if true, the Eighth Amendment is concerned *only* with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 379 (1981). The alleged deprivation must be "excessive in order to sustain conditions of confinement claim." *Williams v. Mehra*, 186 F.3d 685, 691-92 (6th Cir. 1999).  Plaintiff has not demonstrated that he was deprived of essential food,[8] water, medical care or sanitation, and his Eighth Amendment claims should fail as a matter of law.

### iv.     *Denial of a Properly Ventilated Cell*

Plaintiff fully grieved his claimed denial of a properly ventilated cell.  Furthermore, Plaintiff's medical records indicate that he has been at risk of "heat related illness" since October 26, 2007.  (Dkt. No. 24, Ex. G-H)  Plaintiff's stayed discovery requests contain pointed questions regarding Monahan's knowledge or awareness of his susceptibility to heat related illness and her response to his complaints about the temperature in his cell.  (Dkt. No. 21, Ex. 1)  Therefore, dismissal of this claim would be improper at this time.

---

[8] Again, Plaintiff may have sustained his burden had this issue been fully grieved.

- 15 -

2. *Terrill*

    a. *Hiding Plaintiff's Wheelchair*

As indicated above, Plaintiff has indicated a medical need for use of a wheelchair outside the confines of his cell. Plaintiff claims that without his wheelchair he cannot get to his meals or obtain insulin shots for his diabetes. Plaintiff's complaint alleges that Terrill intentionally hid the wheelchair knowing the consequences would result in a serious risk to Plaintiff's health and safety. (Dkt. No. 1, ¶¶ 15, 38) Plaintiff also has evidence contradicting Terrill's claim that he did not know to whom the wheelchair belonged. (Dkt. No. 24, Ex) Since Plaintiff has specific outstanding discovery requests on these issues, dismissal of this claim would be premature.

    3. *Summary of Deliberate Indifference Claims that Should Survive*

In sum, just two of Plaintiff's deliberate indifference claims should survive: (1) Plaintiff's claim that Monahan denied him a properly ventilated cell; and (2) Plaintiff's claim that Terrill hid his wheelchair. All other deliberate indifference claims should be dismissed.

B. *ADA Claims*

Plaintiff has brought suit against Defendants in their individual capacities. (Dkt. No. 1, ¶ 9) However, ADA claims against state officials in their individual capacities are not viable as a matter of law. *Everson v. Leis*, 556 F.3d 484, 501 (6th Cir. 2009) citing, *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Therefore, any ADA claims against Defendants must be dismissed.

**C.**      ***First Amendment Retaliation Claims***

A prisoner's First Amendment retaliation claim must contain three elements: (1) he was

engaged in protected conduct; (2) the defendant took an adverse action against him; and (3) that

there is a causal connection between the two (i.e., that the adverse action was motivated at least

in part by the exercise of the constitutional right). *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir.

1999) (en banc). An inmate engages in protected conduct when he files grievances and/or

lawsuits. *Noble v. Schmidt*, 87 F.3d 157, 162 (6th Cir. 1996). An adverse act is an action

capable of deterring a person of ordinary firmness from continuing to engage in that conduct.

*Thaddeus-X*, 175 F.3d at 398. Moreover, Plaintiff has an evidentiary burden to establish that the

allegedly retaliatory acts amounted to more than a *de minimis* injury. *Bell v. Johnson*, 308 F.3d

594, 606 (6th Cir. 2002). As for the requisite causal connection, Defendants should be granted

summary judgment where there are only bare allegations of malice. *Thaddeus-X*, 175 F.3d at

399.

As noted by the Eighth Circuit, "[w]hile a prisoner can state a claim of retaliation by

alleging that disciplinary actions were based upon false allegations, no claim can be stated when

the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to

perform. Any other rule would allow a prisoner to "openly flout prison rules after filing a

grievance and then bring a claim under § 1983 arguing that prison officials disciplined him in

retaliation for his filing a grievance." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)

(per curiam).

- 17 -

With one exception (discussed below), the "acts of retaliation" about which Plaintiff complains resulted from the imposition of discipline that was sustained, or substantially sustained, by nonparty ARF employees.  In addition, Plaintiff does not denying engaging in the conduct that was the subject of discipline but rather that the discipline was arbitrarily imposed. Therefore, since Plaintiff actually violated prison rules and, with one exception, does not even allege that the discipline was based on a false claim, those claims should be dismissed as a matter of law. *Orebaugh*, *supra*.

However, Plaintiff should be permitted to proceed on his theory of retaliation that Gallup and Terrill were involved in a razor blade being planted in his wheelchair[9] and that Gallup confiscated prisoner appliances telling them it was because "plaintiff writes grievances." Plaintiff has some evidentiary support for his contention, in the form of prisoner affidavits, that ARF employees have falsely placed weapons on prisoners utilizing the "buddy system" (Dkt. No. 24, Ex. C and D), and the stayed discovery seeks responses that arguably could result in more specific information about Plaintiff's claims.[10]  Also, there is no question that blaming Plaintiff for the imposition of discipline on other inmates, if true, could subject him to physical danger and ridicule from other inmates - deterring him from filing grievances in the future.

---

[9] The undersigned concedes that this will be a difficult claim for Plaintiff to meet. However at this juncture, he has alleged sufficient facts to allow his claim to survive pending the conclusion of discovery.

[10]  Viewed in a light most favorable to Plaintiff, the undersigned rejects the notion that the two month time period between the fling of his grievance and the retaliatory action was too tenuous.

**D.      *Conspiracy Claims***

Plaintiff alleges that Terrill and Gallup "designed a plan and scheme to further harass, intimidate and cause health hazards to him" by stating "let's get him now" and by Terrill's alleged threat of, "You'll be in the hole by the end of the week."  (Dkt. No. 1, ¶ 18)  Plaintiff also alleges that Monahan conspired with Andison take away his wheelchair and cane, and deny him an appropriate diabetic diet and a properly ventilated cell while in ADSEG. (Dkt. No. 1, ¶ 26-27)

Plaintiff does not indicate whether he asserts his conspiracy claim under 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3).  A claim under § 1985(3) requires the showing of a conspiracy to deprive Plaintiff of the equal protection of the laws, and an act in furtherance of the conspiracy that caused injury to Plaintiff.  Further, Plaintiff must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Johnson Hills and Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir., 1994), *cert. denied*, 514 U.S. 1066 (1995).  And, there must be a predicate constitutional violation to support a claim of conspiracy under 42 U.S.C. § 1985.  *Volunteer Medical Clinic, Inc., v. Operation Rescue*, 948 F.2d 218, 226 (6th Cir. 1991).  None of these factors have been demonstrated by Plaintiff.  There is no predicate constitutional violation, no showing of class-based *animus*, and, at least with respect to Andison and Monahan, no showing of an agreement between these Defendants to injure Plaintiff.  Without a violation of § 1985(3), there can be no violation of § 1986.  *Seguin v. Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).

A civil conspiracy under 42 U.S.C. § 1983 is an agreement between two or more persons to injure another by unlawful action.  Plaintiff must demonstrate: (1) that a single plan existed;

(2) the alleged coconspirators shared in the general conspiratorial objective; and (3) an overt act was committed in furtherance of the conspiracy. *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). Whether proceeding under 42 U.S.C. § 1985 or for civil conspiracy under § 1983, a plaintiff must show some evidence of coordinated actions between the alleged conspirators. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir. 1996). Conclusory or vague accusations that do not describe some "meeting of the minds" cannot state a claim for relief under 42 U.S.C. §§ 1983 or 1985. *See Naguib v. Illinois Dept. of Professional Regulation*, 986 F.Supp. 1082, 1092 (N.D. Ill. 1997); *Pollack v Nash*, 58 F.Supp.2d 294, 299-300 (S.D. NY. 1999).

With respect to the alleged conspiracy between Monahan and Andison, Plaintiff has not alleged coordinated actions sufficient to maintain a conspiracy claim. His complaint is devoid of facts indicating a meeting of the minds. Plaintiff's conclusory labeling of Monahan and Andison as "co-conspirators," without more, is insufficient to state a claim as a matter of law and should be dismissed. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) ("tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.") However, with respect to the purported conspiracy between Gallup and Terrill, Plaintiff has sufficiently alleged "a meeting of the minds" such that dismissal at this juncture would be inappropriate. Specifically, Plaintiff's assertion that they said "let's get him now" and thereafter engaged in the sustainable alleged retaliation set forth above, is sufficient to defeat Defendants' motion.

## IV.  CONCLUSION

In light of the foregoing, the undersigned RECOMMENDS that Defendants' Motion for

Summary Judgment be GRANTED IN PART but DENIED with respect to the following claims:

1.     Plaintiff's claim that Monahan denied him a properly ventilated cell while in
       ADSEG.

2.     Plaintiff's claim that Terrill was deliberately indifferent to his medical needs by
       hiding his wheelchair.

3.     Plaintiff's claim that Gallup and Terrill were involved in a razor blade being
       planted in his wheelchair.

4.     Plaintiff's claim that Gallup retaliated against him by confiscating prisoner
       appliances telling the prisoners he was doing so because "plaintiff writes
       grievances."

5.     Plaintiff's claim that Gallup and Terrill conspired to violate his constitutional
       rights as set forth above.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local,* 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

- 21 -

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: November 9, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 9, 2009, by electronic and/or ordinary mail.

s/Melody R. Miles
Case Manager to Magistrate Judge Mark A. Randon

- 22 -